# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARK FURNARI,

      Plaintiff,

-vs-

                                      Case No. 6:10-cv-1463-Orl-28DAB

SHAPEWRITER, INC., WALLY GREINER,
XIAOYAN (EVA) PANG, JOE ZHOU and
SHUMIN ZHAI,

      Defendants.

---

## ORDER

      This case centers around an agreement between Plaintiff Mark Furnari ("Plaintiff")
and Defendant Shapewriter, Inc. ("Shapewriter"). Plaintiff alleges that all named defendants
fraudulently induced him to act on behalf of Shapewriter, (Compl. ¶ 47), and that
Shapewriter breached the agreement by not paying Plaintiff as required, (id. ¶ 57). Plaintiff
also alleges that the agreement was an employment contract and asserts a claim for unpaid
wages. (Id. ¶¶ 59-64).

      Defendants Shapewriter and Shumin Zhai ("Mr. Zhai") have filed motions to dismiss
for lack of personal jurisdiction, or in the alternative to dismiss Count I–fraud in the
inducement–for failure to state a claim upon which relief can be granted. (Shapewriter's
Mot. to Dismiss ("Shapewriter MTD"), Doc. 8 at 1; Zhai's Mot. to Dismiss ("Zhai MTD"), Doc.
29 at 1). Mr. Zhai also moves to dismiss Count I pursuant to Federal Rule of Civil Procedure
9(b) for failure to plead fraud with the requisite particularity. (Zhai MTD at 1). Plaintiff

responded to Shapewriter's motion, (Doc. 19), but did not respond to Mr. Zhai's motion and the time to do so has passed.  Both motions are ripe, and both must be granted.

## I.Background[1]

Shapewriter is a Delaware corporation with its principal place of business in Ontario, Canada (Wally Greiner Decl., Doc. 8-2 ¶ 2).  It specializes in software applications utilized in the wireless communication business. (Compl. ¶ 12).  Mr. Zhai is a California resident who serves as a consultant to Shapewriter, (Zhai Decl., Doc. 30 ¶ 2; Compl. ¶ 6), and Plaintiff is a Florida resident, (Compl. ¶ 1).

Shapewriter was contacted by Digit Wireless, a Massachusetts-based company, which was seeking an alliance with Shapewriter. (Greiner Decl. ¶ 11).  At the time, Plaintiff was an employee of Digit Wireless and traveled to Canada to meet with Shapewriter. (Id. ¶ 12).  Thereafter, Plaintiff solicited a position with Shapewriter, indicating he had contacts with two companies that he thought might be interested in acquiring Shapewriter–Dell Computer ("Dell"), a Texas-based company, and Nuance Communications ("Nuance"), Massachusetts-based company. (Id. ¶¶ 13-14).  No one from Shapewriter physically entered Florida to hold these discussions, but at least some discussions occurred via phone and e-mail while Plaintiff was in Florida. (Id. ¶13; Furnari Aff., Doc. 20 ¶¶ 4-5, 19).

Eventually, Plaintiff accepted the position of Vice President of Business and Strategic Partner Development for Shapewriter. (Furnari Aff. ¶ 6).  In this position, Plaintiff was

---

[1] For purposes of this Order, the Court "accept[s] factual allegations in the complaint as true to the extent that they are uncontested and, in cases of conflict, construe[s] all reasonable inferences in [Plaintiff's] favor." Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010) (citing SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997)).

responsible for communicating with companies interested in licensing the Shapewriter software or in acquiring the Shapewriter company. (Compl. ¶¶ 13, 16). Shortly after Plaintiff began working for Shapewriter, Shapewriter's President, Wally Greiner ("Greiner"), and CEO, Xiaoyan (Eva) Pang, indicated that they wanted to sell Shapewriter. (Furnari Aff. ¶ 17). Consequently, Plaintiff's contract was replaced by a verbal agreement with Shapewriter ("Verbal Agreement"). (Id. ¶ 18). Pursuant to the Verbal Agreement, Plaintiff would receive 15% of the proceeds from the sale of Shapewriter once payment was received by Shapewriter or its shareholders; Shapewriter would continue to pay Plaintiff's expenses; and Plaintiff would be involved in the negotiations for the sale of Shapewriter. (Id. ¶¶ 18-19).

Plaintiff began negotiating with Nuance and as a result, Nuance entered a commitment letter to purchase Shapewriter. (Compl. ¶¶ 20-22). At the same time, Nuance obtained a commitment letter from Shapewriter to continue negotiations without Plaintiff's involvement. (Id. ¶ 23). Greiner then informed Plaintiff that Shapewriter was having problems with Nuance and encouraged Plaintiff to market Shapewriter to other companies, specifically Dell. (Id. ¶ 26). Greiner also indicated that if Plaintiff secured a letter of interest from Dell, it may be used as leverage in Shapewriter's negotiations with Nuance. (Id. ¶ 30).

The parties then finally put their agreement in writing ("Written Agreement"). The agreement provided that Plaintiff would receive 15% of the profits if Shapewriter was sold to Dell and 10% of the profits if Shapewriter was sold to Nuance and Shapewriter used Dell's interest as leverage. (Written Agreement, Ex. A to Compl.). Additionally, Shapewriter agreed to pay all of Plaintiff's outstanding expenses but required that any future expenses be specifically authorized in writing before Shapewriter would pay them. (Id.). All payments

-3-

were to be made to Plaintiff at his residence in Florida. (Id. ¶ 26). A draft of the Written Agreement was e-mailed from Greiner's office in Canada to Plaintiff in Florida; Plaintiff then signed it in Florida and faxed it back to Greiner in Canada, where Greiner signed it on behalf of Shapewriter. (Id. ¶ 23; Greiner Decl. ¶¶ 17-18). A final copy of the signed agreement was then faxed back to Plaintiff in Florida. (Furnari Aff. ¶ 24).

Subsequently, Plaintiff obtained a letter of interest from Dell which Shapewriter used as leverage in its negotiations with Nuance. (Compl. ¶¶ 30-31, 35-36). Ultimately, Nuance purchased Shapewriter for $7 million, and payment was made by Nuance to Shapewriter in or about May, 2010. (Id. ¶¶ 35, 37). Plaintiff has not received any commission for the sale of Shapewriter. (Id. ¶ 38; Furnari Aff. ¶ 27).

## II. Legal Standard

"The plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009) (citation omitted). The burden then shifts to the defendant to raise a "'meritorious challenge to personal jurisdiction'" "'through affidavits, documents or testimony.'" Id. (quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)). "If the defendant does so, 'the burden shifts [back] to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" Id.

The Court may only exercise specific personal jurisdiction[2] over non-resident defendants if two factors are met. Sculptchair, 94 F.3d at 626. First, there must be a basis

---

[2]Plaintiff does not assert that this Court has general personal jurisdiction over any of the defendants.

for jurisdiction under Florida's long-arm statute, section 48.193, Florida Statutes; and

second, maintenance of the suit cannot violate the Due Process Clause of the Fourteenth

Amendment. Id. (citations omitted).

The pertinent parts of Florida's long-arm statute are as follows:

(1) Any person, whether or not a citizen or resident of this state, who
personally or through an agent does any of the acts enumerated in this
subsection thereby submits himself or herself . . . to the jurisdiction of the
courts of this state for any cause of action arising from the doing of any of the
following acts:

> (a) Operating, conducting, engaging in, or carrying on a
> business or business venture in this state or having an office or
> agency in this state.

> (b) Committing a tortious act within this state.

. . . .

> (g) Breaching a contract in this state by failing to perform acts
> required by the contract to be performed in this state.

§ 48.193(1), Fla. Stat. "The reach of the Florida long-arm statute is a question of Florida

state law" and therefore, this Court is "required to construe it as would the Florida Supreme

Court." Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91

(11th Cir. 1983) (citations omitted). "The Florida long-arm statute is strictly construed," id.

at 891, and "the plaintiff bears the burden of proving" its application, Sculptchair, 94 F.3d at

627.

If a basis for exercising personal jurisdiction exists under Florida's long-arm statute,

then it must be determined "whether sufficient minimum contacts exist between the

defendants and the forum state so as to satisfy 'traditional notions of fair play and

-5-

substantial justice' under the Due Process Clause of the Fourteenth Amendment." Id. at 626. In order to establish sufficient minimum contacts, three criteria must be met: (1) "the contacts must be related to the plaintiff's cause of action or have given rise to it"; (2) "the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws"; and (3) "the defendant's contacts within the forum state must be such that she should reasonably anticipate being haled into court there." Id. (citations omitted).

### III. Personal Jurisdiction Over Shapewriter

Plaintiff asserts that Shapewriter's actions satisfy three sections of the Florida long-arm statute: first, that Shapewriter was conducting business and maintained an office in Florida, satisfying section 48.193(1)(a); second, that Shapewriter committed the tort of fraudulent inducement within Florida, satisfying section 48.193(1)(b); and third, that Shapewriter breached the contract between it and Plaintiff by failing to perform acts required by the contract to be performed in Florida, satisfying section 48.193(1)(g). (Pl.'s Resp., Doc. 19 at 3-4). As discussed below, Shapewriter's actions fail to satisfy section 48.193(1)(a) and (b), but they do satisfy section 48.193(1)(g). However, even though Florida's long arm statute is satisfied, the exercise of personal jurisdiction over Shapewriter would be improper because Plaintiff has failed to establish that Shapewriter has sufficient minimum contacts to satisfy the requirements of the Due Process Clause.

### A. Long-Arm Statute

In order to establish that Shapewriter was conducting business in Florida under section 48.193(1)(a), its activities—considered collectively—must "show a general course of

business activity in the State for pecuniary benefit." Sculptchair, 94 F.3d at 627 (quoting Dinsmore v. Martin Blumenthal Assocs., Inc., 314 So. 2d 561, 564 (Fla. 1975)). The only business activity alleged is Shapewriter's agreement with Plaintiff. Clearly, this one isolated exploit is insufficient to establish a general course of business activity. See id. at 628 (holding that "a series of telephone conversations" and "a one-hour meeting" in the forum state to facilitate a contract were insufficient to establish a general course of business activity).

Plaintiff also argues that Shapewriter maintained an office in Florida because Plaintiff "performed and conducted all of his work as Shapewriter's Vice President of Business and Strategic Partner Development from his home office" in Florida. (Pl.'s Resp. at 3). Shapewriter simply asserts that "it does not maintain an office . . . in Florida." (Greiner Decl. ¶ 4; Shapewriter MTD at 7). Florida courts have not defined what constitutes an office for jurisdictional purposes, but at least one court has determined that a home office may constitute an office for purposes of Florida's long-arm statute under certain circumstances. Golant v. German Shepherd Dog Club of Am., Inc., 26 So. 3d 60, 63 (Fla. 4th DCA 2010). Those circumstances are not present in the instant case.

In Golant, a former board member of the German Shepherd Dog Club of America ("the Club") sued the Club claiming that she was improperly removed from office. Id. at 61-62. The plaintiff in Golant was a Florida resident, and the Club was a not-for-profit corporation organized under the laws of New York. Id. at 61. The Club, however, maintained no physical office in New York or anywhere else. Id. Rather, all of the Club's business was transacted through the actions of its board. Id. As a board member, the

plaintiff in Golant "conducted Club business from her home in Florida." Id. The Golant court

held that because "the Club maintains no physical office and [] Club business is conducted

largely, if not exclusively, from the homes of its Board members," the plaintiff's home was

a "de facto office of the Club" which satisfied section 48.193(1)(a). Id. at 63.

Golant is distinguishable from the instant case because unlike the Club in Golant,

Shapewriter does maintain a physical office in Canada, and Shapewriter's business is not

exclusively, or even largely, conducted through home offices. The reasons for finding the

plaintiff's home a "de facto office" in Golant are not present in the instant case, and Plaintiff

provides no other authority for such a determination. Additionally, Florida law dictates that

the long-arm statute be narrowly construed. Oriental Imps. & Exps., 701 F.2d at 891.

Accordingly, Plaintiff does not satisfy section 48.193(1)(a).

Plaintiff next argues that section 48.193(1)(b) is satisfied because Shapewriter

committed the tort of fraud in the inducement by making false representations over the

phone and via e-mail to Plaintiff while Plaintiff was in Florida. The Complaint, however, fails

to state a claim for fraud in the  inducement, and therefore the claim cannot support the

Court's exercise of personal jurisdiction. See PVC Windoors, Inc. v. Babbitbay Beach

Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010) ("In Florida, before a court addresses the

question of whether specific jurisdiction exists under the long-arm statute, the court must

determine 'whether the allegations of the complaint state a cause of action.'" (citations

omitted)).

To state a claim for fraud in the inducement, Plaintiff must allege "(1) a false

statement regarding a material fact; (2) the statement maker's knowledge that the

representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." <u>Thompkins v. Lil' Joe Records, Inc.</u>, 476 F.3d 1294, 1315 (11th Cir. 2007). Additionally, "'[a]s a general rule, fraud cannot be predicated on a mere promise not performed.'" <u>PVC Windoors</u>, 598 F.3d at 809 n.12 (quoting <u>Alexander/Davis Props., Inc., v. Graham</u>, 397 So. 2d 699, 706 (Fla. 4th DCA 1981)). However, "'a promise may be actionable as fraud where it can be shown that the promissor had a specific intent not to perform the promise at the time the promise was made, and the other elements of fraud are established.'" <u>Id.</u>

The affirmative misrepresentations alleged by Plaintiff include: (1) "that [Plaintiff] would receive a written contract wherein he would receive a commission upon the sale of the business to any third party," (2) "that [Plaintiff] would, indeed, receive a commission for the sale of Shapewriter," (3) "that [Plaintiff] would receive reimbursement for all expenses incurred in marketing Shapewriter," (4) "that [Plaintiff] would be involved in the negotiations for sale of Shapewriter to a third party" and (4) "that [Plaintiff] would receive payment once payment was received by Shapewriter or its shareholders." (Compl. ¶ 41). All of these alleged misrepresentations are promises to be performed in the future, and therefore, in order to state a fraud in the inducement claim based on these promises, Plaintiff must allege that the promissor had specific intent not to perform the promise at the time the promise was made. Plaintiff's Complaint contains no allegations regarding the intent of any of the Defendants at the time the promises were made, and therefore, it fails to state a claim for fraud in the inducement. Consequently, section 48.193(1)(b) is not satisfied.

Finally, Plaintiff argues that section 48.193(1)(g) is satisfied because Shapewriter failed to pay Plaintiff, which was an act required by the contract to be performed in Florida. The Court agrees. "It is sufficient for purposes of satisfying [Florida's long-arm statute] that a complaint allege that a contract was made by a resident plaintiff with a non-resident defendant and that payment was agreed to have been made in Florida." Aspsoft, Inc. v. Webclay, 983 So. 2d 761, 766 (Fla. 5th DCA 2008) (citation omitted); Woodard Chevrolet, Inc. v. Taylor Corp., 949 So. 2d 268, 270 (Fla. 4th DCA) (citing cases).

### B. Due Process

Because section 48.193(1)(g) confers personal jurisdiction over Shapewriter, it must be determined whether the exercise of personal jurisdiction over Shapewriter would violate the Due Process Clause of the Fourteenth Amendment.  As the following discussion illustrates, Plaintiff has failed to establish that Shapewriter has the requisite minimum contacts with the forum state, and therefore the exercise of personal jurisdiction over Shapewriter would violate due process.

Plaintiff argues that Shapewriter satisfied the minimum contacts requirement by contracting with Plaintiff, who worked from his home office in Florida; reimbursing Plaintiff for his expenses, many of which he incurred in Florida; communicating with Plaintiff in Florida; and making payments to Plaintiff in Florida. (Pl.'s Resp. at 4-5). In support, Plaintiff cites Everett v. Dreis & Krump Manufacturing Co., 685 F. Supp. 1224 (M.D. Fla. 1988), Smith Architectural Group, Inc. v. Dehaan, 867 So. 2d 434 (Fla. 4th DCA 2004), and Stomar, Inc. v. Lucky Seven Riverboat Co., 821 So. 2d 1183 (Fla 4th DCA 2002). (Pl.'s Resp. at 6).  Unlike the parties in the instant case, however, the parties in Everett, Smith,

and Stomar were specifically contracting for services to be performed within the state of Florida. Everett, 685 F. Supp. at 1227 (holding minimum contacts were satisfied where the parties "specifically contemplated and agreed that the[] services would be rendered in Florida"); Smith, 867 So. 2d at 435, 437 (holding minimum contacts were satisfied where the defendant solicited the plaintiff in Florida and agreed that the plaintiff's architectural services would be rendered in Florida); Stomar, 821 So. 2d at 1187 (holding that minimum contacts was satisfied because the defendant solicited the plaintiff in Florida to negotiate the sale of the defendant's ship in Florida). Shapewriter, on the other hand, was contracting with Plaintiff to perform services outside of Florida–specifically, to negotiate with Nuance in Massachusetts and Dell in Texas. As such, the cases cited by Plaintiff are not persuasive.

Instead, Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989 (11th Cir. 1986), is more closely analogous to the instant case. In Sea Lift, the defendant, Refinador Costarricense de Petroleo, S.A. ("RECOPE"), a Costa Rican company, owned a barge that was used in a dredging operation at Port Moin, Costa Rica. Id. at 991. During the dredging operation, the barge capsized. Id. Subsequently, representatives of RECOPE solicited the Plaintiff, Sea Lift, Inc. ("Sea Lift"), a marine salvage business in Florida, to bid on the salvage project. Id. Sea Lift telexed the proposal from Florida to Costa Rica; RECOPE then signed the contract in Costa Rica and sent it back to Sea Lift in Florida, where Sea Lift signed it. Id. at 991-92. Due to problems during the salvage operation, RECOPE refused to pay Sea Lift, and Sea Lift filed suit in the Southern District of Florida. Id. at 991, 992. The district court determined that the following contacts satisfied the minimum contacts requirement:

-11-

the solicitation of Sea Lift by RECOPE agents present in Florida for that specific purpose, the sending of the standard form contract to Sea Lift in Florida to be signed and executed, and RECOPE's failure "to perform an act required by the contract to be performed in Florida," *i.e.*, failure to pay Sea Lift in U.S. dollars.

Id. at 993. The Eleventh Circuit disagreed, however, and held that "the exercise of in personam jurisdiction over RECOPE exceeded the limits of due process." Id. at 992. In doing so, the Eleventh Circuit found it important that no "significant negotiations of important terms" took place in Florida, id. at 993 (citations omitted), and that "[a]lthough some in-Florida preparation by Sea Lift was perhaps foreseeable, Sea Lift's duties were to be performed exclusively in Costa Rica," id. at 994.

Like the agreement in Sea Lift, the agreement in the instant case contemplated most of the Plaintiff's performance to take place outside of Florida. Additionally, in the instant case all significant negotiations took place in Canada or over the phone. Moreover, Shapewriter never physically entered Florida to solicit Plaintiff's business. See PVC Windoors, 598 F.3d at 812 (finding it significant that the defendant did not physically enter Florida). In fact, Shapewriter did not solicit Plaintiff at all; it was Plaintiff who solicited Shapewriter in Canada.

Additionally, while it is sufficient under Florida's long-arm statute to allege that a contract was made by a resident plaintiff with a non-resident defendant and that payment was agreed to have been made in Florida, such an allegation on its own is insufficient for due process purposes. Sendtec, Inc. v. Cosmetique, Inc., No. 8:07-cv-1643-T-24-TGW, 2008 WL 660297, at *4 (M.D. Fla. March 6, 2008) (citations omitted). The Eleventh Circuit has also noted that neither "[t]he actual mailing of payments to the forum state" nor "[a]

presumptive duty regarding place of payment" weighs heavily in the minimum contacts determination. <u>Sea Lift</u>, 792 F.2d at 994.

Accordingly, Plaintiff has failed to establish that Shapewriter had the requisite minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.  As such, this Court lacks personal jurisdiction over Shapewriter.

### IV. Personal Jurisdiction Over Mr. Zhai

As discussed in Part III.A, *supra*, Plaintiff has failed to state a claim for fraud in the inducement.[3]  As this is the only claim against Mr. Zhai, Plaintiff has also failed to satisfy Florida's long-arm statute with regard to Mr. Zhai.  Even if Plaintiff had stated a claim for fraud in the inducement and satisfied Florida's long-arm statute, however, the exercise of personal jurisdiction over Mr. Zhai would violate the Due Process Clause of the Fourteenth Amendment.

Mr. Zhai is a resident of California, and he has never worked or resided in Florida. (Zhai Decl. ¶¶ 2-3).  In fact, the only times Mr. Zhai ever entered the state of Florida were prior to and unrelated to the circumstances giving rise to this case.  (<u>Id.</u> ¶ 5).  Moreover, Mr. Zhai was not a party to the agreement at issue in this case, (<u>see</u> Written Agreement; Compl. ¶¶ 15, 19, 27 (indicating that all agreements were between Plaintiff and Shapewriter)), and all communications between Mr. Zhai and Plaintiff were initiated by Plaintiff.  (Zhai Decl. ¶¶

---

[3]Although the discussion in Part III.A., *supra*, addressed the claim as it applied to Shapewriter, the analysis is equally applicable to Mr. Zhai.

-13-

6-8). Thus, Plaintiff has failed to demonstrate that Mr. Zhai established minimum contacts with the forum state, and this Court lacks personal jurisdiction over Mr. Zhai.[4]

## V. Conclusion

In accordance with the foregoing discussion, Defendant Shapewriter, Inc.'s and Defendant Shumin Zhai's motions to dismiss for lack of personal jurisdiction (Docs. 8 and 29) are **GRANTED** and it is **ORDERED** that all counts against Defendants Shapewriter, Inc. and Shumin Zhai are **dismissed for lack of personal jurisdiction**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this _24th_ day of January, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

[4]Because all counts against Mr. Zhai must be dismissed for lack of personal jurisdiction, the Court need not address Mr. Zhai's Federal Rule of Civil Procedure 9(b) motion.